PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 5:11CR0325 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CLAUDE A. SMITH, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 27] |

On July 20, 2011, a grand jury charged a then 75-year old Claude A. Smith with armed bank robbery (Count 1), use of a firearm during a crime (Count 2) and being a felon in possession of a firearm (Count 3). Smith, no stranger to violent felonies, had, just one day before the indictment was returned, completed a five-year term of state parole for aggravated murder.

Less than one week before his sentencing hearing, Smith, *via* handwritten letter, seeks new counsel and to withdraw his pleas of guilty. *See* Letter from Defendant Claude A. Smith, postmarked January 10, 2012 (ECF No. 27).[1]

### Background

On November 10, 2011, Defendant Claude A. Smith entered pleas of guilty to Counts 1 and 2--armed bank robbery and carrying a firearm--pursuant to a written plea agreement.

---

[1] Prior to receiving Smith's letter, his counsel had informed the Court and the government's counsel of the likelihood such a request would be made either orally or in writing.

(5:11CR0325)

Prior to Smith entering the pleas of guilty, the United States Probation Office prepared a Presentence Investigation Report ("Pre-Plea PSR") limited to Smith's criminal history.  The Pre-Plea PSR revealed that Smith would be an Armed Career Criminal subject to an enhanced sentence, due to his extensive history of convictions for violent felonies, if convicted of Count 3 of the indictment–being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  Because, in the written plea agreement, the Government promises the dismissal of Count 3, at the time of sentencing, if Smith pleads guilty to Counts 1 and 2, the final PSR calculates a Criminal History score of only 3 points which corresponds with a Criminal History Category of II.[2]

During the change of plea hearing, Smith was, at all times relevant, under oath.  He had, prior to the start of the hearing initialed each page and signed the last page of the written plea agreement.  He assured the Court that his initials on each page indicated that he had read, understood and discussed with counsel that page.

At the request of the Court, the Government's counsel summarized the counts of the indictment to which Smith would plead guilty, to wit:

> MR. DESKINS: . . .Yes. Thank you very much, Judge.
> With respect to Count 1 of the indictment, which
> charges the armed bank robbery, there is a maximum term of
> imprisonment here by law of 25 years, a minimum -- there is
> no mandatory minimum in this case as to that count. A
> statutory fine of $250,000. And a minimum period of
> supervised release of five years. And also a special
> assessment of $100.

---

[2]  Interestingly, by committing the instant offenses only one day after his state parole ended, Smith narrowly avoided two additional criminal history points.

2

(5:11CR0325)

> With respect to Count 2, which charges the defendant with carrying a firearm during a crime of violence, in fact brandishing that firearm, *the mandatory minimum period here is seven years, consecutive.* And the maximum fine is $250,000, a minimum period of supervised release of three years and a special assessment of $100 on that count as well, for a total amount of special assessment of $200.

To ensure that Smith understood that he would serve a minimum mandatory seven-year term for Count 2 consecutive to any term imposed for Count 1, the Court engaged him in the following colloquy.

> THE COURT: It is important, all of this is important, but what I will draw your attention to, Mr. Smith, is this: Do you realize, sir, that if you enter a plea of guilty to Count 2, that along with that plea of guilty will follow a *mandatory minimum* imprisonment term of at least seven years?
>
> THE DEFENDANT: Yes, Judge. My attorney explained everything to me, that, you know, this is something that can't be waived, it's a mandatory thing.

Later, Smith, again, assured the Court that he understood that a seven-year sentence was the minimum sentence Smith could expect.

> THE COURT: We know probation is not the issue. I stand before you, and I tell you this, I will take no pleasure in doing it, but when I sentence you, I will sentence you to a *minimum* of seven years.
>
> And you will expect that, won't you?
>
> THE DEFENDANT: Yes, ma'am.

Finally, to reinforce that Smith should not expect early release on "parole," the Court had the following exchange with him.

3

(5:11CR0325)

THE COURT: And you know the federal system doesn't have parole, don't you? We have probation and supervised release, but –

THE DEFENDANT: I didn't know. I didn't know it was different. But I know you are a separate supervision, someone you have to follow certain guidelines and rules. I knew that.

THE COURT: And the only reason I make sure that you know that there is no parole available in the federal system is that when we talk seven years, we're talking pretty much seven years. There's always the availability of time off for good time, but other than that, there is no such thing in the federal system of getting out early, like you could in the state system. You won't be placed on parole. Basically, you will do the time I sentence you to.

THE DEFENDANT: Oh, okay. I didn't understand that, but –

THE COURT: That's okay. Let me make sure you know this.

You are speaking to the judge who will sentence you. Every federal judge you speak to will tell you the thing we like least about our job is the federal sentencing that we'll do at the end of a criminal case.
So when I take a plea agreement, I like to look the person in the eyes, why I am so pleased you stood there instead of remaining in your seat, because when I sentence you, you will be in the same place.
And although I will feel badly about it, I am going to know, Mr. Smith knew it was coming, because we've had this colloquy, he took an oath, he is telling me the truth. I guarantee you I am also telling you the truth. Do you follow?

THE DEFENDANT: Yes, ma'am.

(5:11CR0325)

After assuring the Court that he was satisfied with his counsel and had discussed his case with her, the Court made this final inquiry of Smith:

> THE COURT: . . . Can you assure me that you are entering these pleas of guilty or anticipate doing so voluntarily, *knowing what is likely to happen, like the minimum sentence of seven years, and doing it of your own free will?*
>
> THE DEFENDANT: Yes, ma'am. I was explained the consequence of everything, you know. And so it was my choice. It was my choice, even today, to think it over with my family, you know.
>
> I've got a daughter that's a prosecutor, and I talked to her, in California. She wasn't too happy with me, but her and I, we talked it over and everything. And she think I am doing the best thing. And my other two daughters, you know, who Miss have met. They think it's the best thing for me to do, you know, to get it over with, and hopefully -- I don't mean to get emotional.
>
> . . . [MS. HUGHES: That's okay. We just need to –]
>
> THE DEFENDANT: But hopefully God will give me the strength to still come out of here alive. That's all I can say.

After the Court confirmed Smith's competency, he entered pleas of guilty to Counts 1 and 2 which the Court accepted, having found them to be knowingly, voluntarily and competently made.

For the reasons described herein, Smith's motion for new counsel and to withdraw his pleas of guilty are denied.

(5:11CR0325)

### Ruling and Analysis

"'The withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court.'" *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir.1987), quoting *United States v. Kirkland*, 578 F.2d 170, 172 (6th Cir.1978) ( per curiam ). Federal Rule of Criminal Procedure 11(d) permits the withdrawal of pleas of guilty, after the court has accepted the pleas, only if a defendant can show a fair and just reason fro requesting the withdrawal. The rule places the burden on a moving defendant to show a "fair and just reason" why withdrawal of a guilty plea should be allowed. *See, e.g., United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.), *cert. denied*, 519 U.S. 973 (1996). "[T]he aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (internal quotation omitted), *cert. denied*, 502 U.S. 1117 (1992). Only if the court rejects the agreement will the defendant have the opportunity to withdraw his plea for any reason without the "fair and just reason" requirement. *Hyde*, 520 U.S. 670 at 674. *United States v. Haygood*, 549 F.3d 1049 (6th Cir. 2008) (four and one-half month delay in making a motion to withdraw guilty plea was fatal).

In determining whether a defendant seeking to withdraw his plea of guilty has shown a "fair and just reason," the Sixth Circuit considers the following factors: (1) the delay in filing the motion to withdraw the plea; (2) the reason for any delay; (3) whether the defendant has asserted

(5:11CR0325)

his innocence; (4) the circumstances underlying the plea; (5) the defendant's nature and background; (6) the defendant's prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. *Alexander*, 948 F.2d at 1004; *United States v. Head*, 927 F.2d 1361, 1375 (6th Cir.), *cert. denied*, 502 U.S. 846 (1991); *United States v. Spencer*, 836 F.2d at, 238.

Each of these factors militates against Smith. While there has not been the extensive delay shown in other cases, several weeks passed before Smith's attempt to withdraw his pleas of guilty--a move inspired by his learning, for ostensibly the first time, from "seasoned inmates," that he was subject to more than eight years of incarceration. At 76, Smith considers a term of incarceration longer than eight years a "life sentence." These arguments are entirely unconvincing. First, Smith who has spent most of his adult life incarcerated for violent felonies can be considered a "seasoned inmate" himself. That said, whether it be the state or federal system, Smith is familiar with the criminal justice system as evidenced by the lengthy criminal record he began accruing at age 16. More to the point, during the plea hearing, the Court made it clear and Smith confirmed that he understood, that seven years (not eight) was the minimum sentence he could expect.[3]

---

[3] The Court is unsure why Smith focuses on eight years versus seven. Perhaps he assumes at least one consecutive year of incarceration would be imposed for Count 1 which carries a maximum term of incarceration of twenty-five years.

7

(5:11CR0325)

As importantly, Smith has not claimed innocence just a bad bargain.[4] The prejudice to the government if the motion were granted would be significant. As the indictment details and Smith acknowledged, at the plea hearing, that he assaulted and put in jeopardy the lives of tellers and employees of the bank he robbed by brandishing a firearm that they had every reason to believe that he would use. The victims deserve finality and closure–timely closure. *See United States v. Lineback*, 330 F.3d 441 (6th Cir. 2003) (in evaluating the seventh factor in a case dealing with sexual exploitation of minors, the Sixth Circuit found no abuse of discretion in a district court's factual determination that the prejudice suffered by the victims, who had been assured that the matter had ended with the defendant's plea agreement, would result in prejudice to the government if the plea was withdrawn and victim testimony was required at trial).

Smith has not shown a "fair and just reason" for withdrawal of his pleas of guilty. Additionally, he offers no meaningful basis for requesting new counsel. Smith's motion for new counsel and to withdraw his pleas of guilty is DENIED.

IT IS SO ORDERED.

 January 13, 2012     /s/ Benita Y. Pearson
Date                          Benita Y. Pearson
                              United States District Judge

---

[4] On this score, nothing could be further from the truth. As indicated above, but for the written plea agreement, Smith could be an Armed Career Criminal subject to an enhanced sentence, due to his extensive history of convictions for violent felonies if convicted of Count 3 of the indictment–being a felon in possession of a firearm. Those circumstances would almost certainly expose him to what he considers a life sentence.